## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LUCIA BRAVO,
an individual,

                                        Case No.:

       Plaintiff,

v.

IQ DATA INTERNATIONAL, INC.
a foreign for-profit corporation,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company, and
TRANS UNION, LLC,
a foreign limited liability company,

       Defendants.
_____/

## **COMPLAINT**

**COMES NOW**, Plaintiff, LUCIA BRAVO (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, IQ DATA INTERNATIONAL, INC. (hereinafter, "IQ DATA"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), and TRANS UNION, LLC (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## **PRELIMINARY STATEMENT**

1.      This is an action brought by an individual consumer for damages for IQ DATA's violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein IQ DATA improperly attempted to collect, credit-reported, and subsequently verified its credit reporting of an alleged consumer loan account on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian, Equifax, and TransUnion that Plaintiff does not owe. More specifically, despite Plaintiff repeatedly advising IQ DATA that she does not owe the debt, and after Plaintiff disputed IQ DATA's reporting of such erroneous information directly to Experian, Equifax and TransUnion—IQ DATA *continued* to demand payment from Plaintiff on the alleged debt, and continued to report the account with a significant balance due and as past-due.

2.      Furthermore, this is an action for damages for Experian's, Equifax's, and TransUnion's violations of the FCRA wherein Experian, Equifax, and TransUnion each continued to incorrectly report Plaintiff as the individual responsible for the alleged IQ DATA account after Plaintiff repeatedly advised that she did not owe the debt, and after Plaintiff provided information to Experian, Equifax, and TransUnion proving she did not owe the debt.

2

## JURISDICTION, VENUE & PARTIES

3.       Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*., and supplemental jurisdiction exists permitting Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

4.       Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5.       Venue is proper in this District as the acts and transactions described herein occur in this District.

6.       At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

7.       At all material times herein, IQ DATA is a foreign for-profit corporation existing under the laws of the state of Washington with its principal place of business located at 21222 30th Drive SE #120, Bothwell Washington 98021.

8.       At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.       At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

10.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

11.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.    Under the FCRA, when a consumer reporting agency conducts any

reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

15.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

16.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA STATUTORY STRUCTURE

19.     The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, "FDCPA"), a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

20.     The FCCPA and FDCPA impose civil liability on any creditor/person as well as any debt collector, and both statutes prohibit engaging in particular violative

conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

21.    Specifically, the FCCPA and FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

22.    For example, the FCCPA prohibits a person from attempting to collect by communicating with a consumer in a manner reasonably expected to abuse or harass a consumer or by communicating in an attempt to collect a debt that is known to be illegitimate or by asserting a legal right that does not exist.  *See* Fla. Stat. §§ 559.72(7) and (9).

## GENERAL ALLEGATIONS

23.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) because he is an individual and allegedly obligated to pay a debt.

24.    At all material times herein, IQ DATA, itself and through its subsidiaries, regularly collects debts—and credit reports debts associated with the same—allegedly owed by consumers residing in Hillsborough County, Florida.

25.    At all material times herein, IQ DATA is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by

15 United States Code, Section 1681s-2.

26.     At all material times herein, IQ DATA is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp*., 819 So. 2d 809 (Fla. 4th DCA 2002).

27.     At all material times herein, IQ DATA attempts to collect and reports information concerning an alleged apartment leasing agreement referenced by account number IQD0ZRS020842* (hereinafter, the "Alleged Debt" or the "Account").

28.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in her name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

29.     At all material times herein, Plaintiff's credit reports and credit files as maintained by Experian, Equifax, and TransUnion did not contain any other negative, derogatory, or adverse tradeline accounts other than the IQ DATA Account at issue in this case.

30.     At all material times herein, IQ DATA furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer

the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

31.     At all material times herein, Experian, Equifax, and TransUnion are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian, Equifax, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

32.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

33.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### DEFENDANTS' CREDIT REPORTING OF THE
### ACCOUNT AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA

34.     In 2019, IQ DATA sent Plaintiff a collection letter in attempts to collect the alleged debt directly from Plaintiff.

35.     As a result, Plaintiff sent IQ DATA a dispute letter in which she claimed this was not her debt.

9

36.    On December 11, 2019, IQ DATA sent a verification letter claiming that the debt was valid and owed (hereinafter, "Collection Letter") and included the alleged apartment lease contract.  A true and correct copy of the Collection Letter is attached as **Exhibit A.**

37.    Importantly, the contract list Lucia Bibb as the lessee and includes Giovanni Arache, Jasmine Thornton, and Layla Thornton as other occupants of the apartment.

38.    This is not Plaintiff's name, she never executed the alleged contract, she never lived at the apartment complex at issue, and she does not know any of these other people listed on the contract.

39.    As a result, Plaintiff obtained her credit reports from Experian, Equifax, and Transunion and saw the IQ DATA Account at issue.

40.    Shortly thereafter, Plaintiff disputed the alleged debt with IQ DATA, Experian, Equifax, and Transunion.

41.    Experian, Equifax, and Transunion each verified the debt as accurate.

42.    On or about January 7, 2021, Plaintiff sent a letter to Experian, Equifax, and TransUnion, with the assistance of her attorneys *again* disputing Defendants' erroneous reporting of the Account (hereinafter, "Second Dispute").  Please see attached a true and correct copy of said Second Dispute labeled as **Exhibit B.**

43.    Equifax received the Second Dispute and responded that they were

unable to locate a credit file and requested further information.  A true and correct copy of Equifax's Response is attached as **Exhibit C.**

44.     Experian received the Second Dispute and verified the debt claiming a Recent Balance and Past Due in the amount of $13,222.  A true and correct copy of Experian's Response is attached as **Exhibit D.**

45.     Transunion received the Second Dispute and claimed they needed proof that Plaintiff's address is accurate.   A true and correct copy of Transunion's Response is attached as **Exhibit E.**

46.     On or about March 1, 2021, Plaintiff sent a letter to IQ DATA, Experian, Equifax, and TransUnion, with the assistance of her attorneys *again* disputing Defendants' erroneous reporting of the Account (hereinafter, "Third Dispute").  Please see attached a true and correct copy of said Third Dispute labeled as **Exhibit F.**

47.     Within the Third Dispute, Plaintiff included a copy of her driver's license and a letter from the Preserve at Alafia (hereinafter, "Preserve Letter"), which stated that Plaintiff resided at the Preserve at Alafia from October 20, 2017 to May 11, 2020.  A true and correct copy of her driver's license is attached as **Exhibit G,** and a true and correct copy of the Preserve Letter is attached as **Exhibit H.**

48.     In other words, the Preserve Letter proves that Plaintiff was residing at the Preserve at Alafia and not at the apartment complex IQ DATA claims during the

alleged time frame at issue.

49.     Experian received the Third Dispute and verified the debt claiming a Recent Balance and Past Due amount of $13,422 as of March 2021.  A true and correct copy of the Experian's Response is attached as **Exhibit I.**

50.     Equifax received the Third Dispute and verified the debt claiming a Balance Amount of $13,398 as of March 2021.  A true and correct copy of Equifax's Response is attached as **Exhibit J.**

51.     Transunion received the Third Dispute and verified the debt claiming a Balance and Past Due Amount of $13,398 as of March 2021. A true and correct copy of Transunion's response is attached as **Exhibit K.**

## **DAMAGES**

52.     As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she will be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by IQ DATA if she needs to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

53.     Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

54.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

55.     The FCCPA provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against IQ DATA. *See* Fla. Stat. § 559.77.

56.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

57.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to IQ DATA that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of

the Account and IQ DATA's ongoing attempts to collect the Alleged Debt.

58.    As of the date of this Complaint, IQ DATA has not initiated a lawsuit to recover the Alleged Debt from Plaintiff.  Likewise, IQ DATA has not obtained a final judgment regarding the Alleged Debt and a final judgment regarding the Alleged Debt has not been transferred to IQ DATA.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)</u>**
**(As to IQ DATA Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

59.    IQ DATA is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

60.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because Plaintiff never lived at the aforementioned apartment complex.

61.    Despite Plaintiff's exhaustive efforts advising IQ DATA that the Account was not hers, IQ DATA continued to send collection letters to Plaintiff in an attempt to collect the Alleged Debt from Plaintiff.

62.    IQ DATA's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite her

repeated attempts to resolve the Account without resorting to litigation and despite not owing the Alleged Debt personally, IQ DATA could and would continue to attempt to collect the Alleged Debt from Plaintiff.

63. IQ DATA's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

64. As a direct and proximate result of IQ DATA's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**
**(As to IQ DATA Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

65. IQ DATA is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that IQ DATA knows does not exist.

66. Specifically, Plaintiff was not and is not personally liable for the Alleged Debt, because she never lived at the apartment complex at issue.

67. Plaintiff provided the Preserve Letter to IQ DATA, which proves she

never lived at the apartment complex at issue.

68.     As such, IQ DATA possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt yet IQ DATA continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

69.     As a direct and proximate result of IQ DATA's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to IQ DATA Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

70.     IQ DATA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian, Equifax, and TransUnion delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

71.     As described above, Plaintiff was not and is not personally liable for the Alleged Debt, because she never lived at the apartment complex at issue.

72.     Despite IQ DATA receiving notice of Plaintiff's disputes from

Plaintiff, Experian, Equifax, and TransUnion—including the information and documents referenced in the above paragraph—IQ DATA willfully and/or negligently failed to request that Experian, Equifax, and TransUnion delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including significant balances due, as significantly past-due, and as charged off.

73.     Rather than delete its reporting of the Account after receiving notice of Plaintiff's repeated disputes, IQ DATA inaccurately "verified" or "updated" its derogatory reporting of the Account which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Experian, Equifax, and TransUnion.

74.     IQ DATA's refusal to request that Experian, Equifax, and TransUnion delete the tradeline associated with the Account was intentionally, willfully, and knowingly done as IQ DATA clearly possessed knowledge that the Account was not hers.

75.     IQ DATA's re-investigations were not conducted in good faith.

76.     IQ DATA's re-investigations were not conducted reasonably.

77.     IQ DATA's re-investigations were not conducted using all information and documents reasonably available to IQ DATA.

78.     As a result of IQ DATA's conduct, actions, and inactions, Plaintiff

suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

79.   IQ DATA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

80.   IQ DATA's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT FOUR:
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiff re-alleges paragraphs one (1) through one fifty-eight (58) as if fully restated herein and further states as follows:

81.   Experian, Equifax, and TransUnion are each subject to, and each

violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

82.    Experian, Equifax, and TransUnion willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

83.    Specifically, despite Plaintiff *repeatedly* advising Experian, Equifax, and TransUnion that the Account is not hers, Experian, Equifax, and TransUnion each continued to report the Account with a balance due, with a balance past-due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

84.    Further, Experian, Equifax, and TransUnion willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian, Equifax, and TransUnion credit reports and credit file.

85.    Such reporting of the Account is false and evidences Experian's, Equifax's, and TransUnion's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

86.    As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

87.    Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

88.    Experian's, Equifax's, and TransUnion's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully

restated herein and further states as follows:

89.    Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

90.    Specifically, Experian, Equifax, and TransUnion each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

91.    Overall, Plaintiff's First Dispute, Second Dispute, and Third Dispute provided Experian, Equifax, and TransUnion with sufficient information allowing Experian, Equifax, and TransUnion to identify that the Account was not hers, and therefore, should be deleted and removed from Plaintiff's credit reports and credit file as maintained by Experian, Equifax, and TransUnion.

92.    Experian, Equifax, and TransUnion did not request any documents from IQ DATA corroborating information furnished and verified by IQ DATA to Experian, Equifax, and TransUnion regarding Plaintiff and the Account in response to any of Plaintiff's First Dispute, Second Dispute, and Third Dispute.

93.    Experian, Equifax, and TransUnion each continue to inaccurately report the Account with derogatory, late payment information with a significant

balance past-due as of the date of this Complaint causing the Account to be reported as a derogatory, negative, or adverse account.

94.    As such, Experian's, Equifax's, and TransUnion's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

95.    Such reporting is false and evidences Experian's, Equifax's, and TransUnion's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

96.    Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes were not conducted reasonably.

97.    Experian's, Equifax's, and TransUnion's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by IQ DATA.

98.    Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes were not conducted in good faith.

99.    Experian's, Equifax's, and TransUnion's reinvestigation procedures are unreasonable.

100.    Experian's, Equifax's, and TransUnion's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian, Equifax, and TransUnion.

101.   Experian's, Equifax's, and TransUnion's reinvestigations were *per se* deficient by reason of these failures in Experian's, Equifax's, and TransUnion's reinvestigations of Plaintiff's disputes and the Account.

102.   As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

103.   Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

104.   Experian's, Equifax's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SIX:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**

Plaintiff re-alleges paragraph one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

105.   Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

106.   Specifically, despite Experian, Equifax, and TransUnion receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute—Experian, Equifax, and TransUnion each *continued* to report the Account with derogatory, late payment information, causing the Account to be reported as a derogatory, negative, or adverse account.

107.   Experian's, Equifax's, and TransUnion's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

108.   As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score

with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

109.    Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

110.    Experian's, Equifax's, and TransUnion's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)</u>**

Plaintiff re-alleges paragraphs one (1) through fifty-eight (58) as if fully restated herein and further states as follows:

111.    Experian, Equifax, and TransUnion are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

112.    Specifically, despite Experian, Equifax, and TransUnion receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute—which proved she never lived at the apartment complex at issue- neither Experian, Equifax, nor TransUnion deleted the Account from Plaintiff's credit reports and credit files.

113.    Instead, Experian, Equifax, and TransUnion continued to report the Account in Plaintiff's credit reports and files as belonging to Plaintiff with a significant balance due as well as derogatory, late payment information regarding the Account.

114.    As a result of Experian's, Equifax's, and TransUnion's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

115.    Experian's, Equifax's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

116.    Experian's, Equifax's, and TransUnion's actions in violation of 15

United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.  Judgment declaring that IQ DATA violated the FCCPA;

b.  Judgment enjoining IQ DATA from engaging in further conduct in violation of the FCCPA;

c.  Judgment against IQ DATA for maximums statutory damages under the FCCPA;

d.  Judgment against Defendants for maximum statutory damages for violations of the FCRA;

e.  Actual damages in an amount to be determined at trial;

f.  Compensatory damages in an amount to be determined at trial;

g.  Punitive damages in an amount to be determined at trial;

h.  An award of attorney's fees and costs; and

i.  Any other such relief the Court may deem proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jon P. Dubbeld*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*