UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUCIA BRAVO,

    Plaintiff,

v.                                                Case No. 8:21-cv-00887-TPB-SPF

IQ DATA INTERNATIONAL, INC., *et al.*

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant IQ Data International, Inc.'s ("IQ Data") Supplemental Motion for Attorney's Fees and Costs (Doc. 99). *Pro se* Plaintiff Lucia Bravo ("Bravo") did not respond to the motion, and the time to do so has passed. The Court recommends that IQ Data's Supplemental Motion be granted in part and denied in part.

**I.    Background**

Although Defendants did not know this when Bravo filed this case in April 2021, Bravo authorized a friend (non-party Helen Rosario) to lease an apartment in her name in early 2018 (Doc. 73-22). When Rosario defaulted on the lease, Bravo claimed her identity was stolen and sued IQ Data, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union") under the Florida Consumer Collections Practices Act ("FCCPA") and the federal Fair Credit Reporting Act ("FCRA") for reporting and attempting to collect the unpaid rent (*see* Doc. 97 at 2-4). In June 2021, Bravo settled her claims against Equifax (Docs. 25-26). In August 2021, Bravo dismissed her case against Experian and Trans Union under Rule 41(a); only Defendant IQ Data remained (Docs. 38-41). When IQ Data obtained evidence later that

month that Bravo was not the victim of identity theft and had authorized Rosario to lease the apartment, IQ Data produced this evidence to Plaintiff's then-counsel, Jon Dubbeld ("Attorney Dubbeld") (*see* Doc. 97 at 6). Attorney Dubbeld filed an emergency motion to withdraw on August 27, 2021, which the Court granted the same day (Docs. 42, 45).

The Court permitted IQ Data to conduct discovery into when Bravo (appearing *pro se* at this point) and Attorney Dubbeld knew Plaintiff's lawsuit was pursued in bad faith (*see* Doc. 50). Meanwhile, in February 2022, the Court dismissed Bravo's lawsuit for lack of prosecution due to her failure to comply with Court orders and attend hearings (Doc. 72). A week later, having deposed Bravo and Rosario, IQ Data moved for attorney's fees and costs (the "Entitlement Motion") against Bravo (under FCRA and FCCPA) and Attorney Dubbeld (under 28 U.S.C. § 1927, Rule 11, and the Court's inherent power) (Doc. 73). After an evidentiary hearing at which Bravo and Attorney Dubbeld appeared and testified (*see* Doc. 92), the undersigned concluded Plaintiff had filed her case in bad faith under FCRA, and her FCCPA claims were frivolous and fraudulent (Doc. 97). The Court recommended granting IQ Data's Entitlement Motion as to Bravo. Finding Attorney Dubbeld did not act in bad faith when he moved to withdraw eight days after receiving evidence that Bravo was lying, the undersigned recommended denying Plaintiff's motion as to him (*Id.*). The district judge adopted the Report and Recommendation, granted IQ Data's Entitlement Motion as to Bravo only, and invited IQ Data to supplement its motion under Local Rule 7.01(c), M.D. Fla. as to the reasonable attorney's fees it expended responding to Plaintiff's complaint (Doc. 98).

At this juncture, IQ Data moves for $53,195.00 in attorney's fees and $3,657.00 in costs against Bravo and attaches the affidavit of its counsel, Douglas Kahle ("Attorney Kahle"), and the firm's invoices (Doc. 99, Doc. 99-1). Also attached is an email exchange

between Attorney Kahle and Bravo from August 18 and 19, 2022. Attaching his fees and costs invoices, Attorney Kahle wrote to Bravo: "You have the right to object or dispute any entries that you disagree with. Accordingly, please review and let me know if you have any objections or disputes." (Doc. 99-1 at 67). Bravo replied that she is "willing to pay the 3k [in costs], I don't have the money but I will borrow it or a payment plan but I do not agree on the 55k [in fees]." (*Id*.). IQ Data filed its Supplemental Motion, and Bravo did not respond. The Court deems the motion unopposed. *See* L.R. 3.01(c), M.D. Fla. (2021) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

## II.    Discussion

The Court uses the lodestar method to determine a reasonable fee award, which it calculates by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotation marks omitted). As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

The party seeking an award of expenses bears the burden of submitting a request that enables the court to determine what expenses the party incurred and why it is entitled to an award of those expenses. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994). However, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its

3

own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quotation omitted); *see also Hepsen v. J.C. Christensen & Assoc., Inc.*, 394 F. App'x 597, 599-600 (11th Cir. 2010). The Court granted IQ Data's Entitlement Motion (Doc. 98); the undersigned addresses only costs and the reasonableness of the hourly rates and hours expended.

### a. Reasonableness of Hourly Rates

IQ Data requests that the Court find reasonable these hourly rates for work performed in 2021 and 2022 by Attorney Kahle and two paralegals employed at his Palm Beach Gardens law firm, Schwed Kahle & Kress, P.A.:

(1) $225 for Attorney Kahle, a partner with over 28 years of experience;

(2) $100 for Lori Randell, a paralegal with over 20 years of experience; and

(3) $100 for Jackie Estrada, a paralegal with approximately 13 years of experience.[1]

To support the requested hourly rates, IQ Data offers Attorney Kahle's affidavit (Doc. 99-1). Bravo, by her failure to respond to IQ Data's motion, does not object to the reasonableness of the hourly rates requested. *See Tacoronte v. Cohen*, No. 6:13-cv-418-Orl-18GJK, 2014 WL 5473567, at *1, 4 (M.D. Fla. Oct. 28, 2014) (approving as unopposed the hourly rates requested by the associates and paralegals/law clerks), *vacated and remanded on other grounds*, 654 F. App'x 445 (11th Cir. 2016).

---

[1] Attorney Kahle's affidavit refers to "Jackie Britton" as one of the two paralegals who billed time to this case (Doc. 99-1 at 2). The firm's invoices, however, list the timekeeper's name as "Jackie Estrada." (*See* Doc. 99-1 at 15, 25, 31, 44). The Court considers Attorney Kahle's affidavit to contain a scrivener's error regarding his paralegal's last name. *See* www.schwedpa.com/attorneys-staff/jackie-estrada/(last visited Oct. 24, 2022). This Report and Recommendation refers to her as Ms. Estrada.

The Court may use its discretion and expertise to determine the appropriate hourly rate to apply to an award of attorney's fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002). Having considered the experience of the respective legal professionals, the complexity of the case, the Court's knowledge of market rates in the Tampa division, the lack of opposition, and the Court's findings regarding hourly rates in other cases, the Court finds the requested hourly rates reasonable. *See, e.g., Hepsen*, 394 F. App'x at 599 (upholding as reasonable magistrate judge's award of $300 hourly rate for attorney in FDCPA case); *Rudy v. USI Sols.*, No. 8:21-cv-585-JSM-TGW, 2022 WL 610785, at *10 (M.D. Fla. Mar. 2, 2022) (determining $350 and $300 to be reasonable hourly rate for attorneys in FDCPA and FCCPA case and authorizing award of paralegal fees at $100 per hour), *report and recommendation adopted,* 2022 WL 1238654 (Mar. 17, 2022); *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-Civ-MARTINEZ/TORRES, 2020 WL 2299937, at *9 (finding $275 per hour reasonable rate for attorney and $100 a reasonable hourly rate for paralegal in FDCPA and FCCPA case), *report and recommendation adopted,* 2020 WL 2299936 (May 7, 2020); *Bauer v. Midland Credit Mgmt, Inc.*, No. 8:12-cv-614-T-23TGW, 2012 WL 6733649, at *4 (M.D. Fla. Dec. 4, 2012) (finding $300 hourly rate reasonable in FDCPA and FCCPA case), *report and recommendation adopted,* 2012 WL 6733021 (M.D. Fla. Dec. 28, 2012).

b. **Reasonableness of Hours Expended**

The next step in the analysis is to determine the number of hours reasonably expended. Attorneys must exercise billing judgment, which "means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours, which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th

Cir. 1999) (quotations, citations, and emphasis omitted).  If a district court finds the number of hours claimed to be unreasonably high, it may either "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).  An across-the-board method is often preferable to avoid the "pick and shovel work" of pouring through voluminous billing records.  *Kenny A. v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008), *rev'd on other grounds*, 559 U.S. 542 (2010).  In fact, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, IQ Data seeks compensation for 242.2 hours of attorney and paralegal time (231.8 hours for Attorney Kahle, 6.0 hours for Ms. Estrada, and 4.4 hours for Ms. Randell) (Doc. 99-1 at 10-47).  By Bravo's failure to respond to IQ Data's Supplemental Motion, she does not oppose these hours as unreasonable.[2]  Nonetheless, the undersigned has reviewed Attorney Kahle's affidavit and invoices and finds that reductions are appropriate for travel time to and from Palm Beach Gardens and Tampa, excessive hours, and time spent on clerical tasks.

---

[2] In response to Attorney Kahle's August 2022 email attaching his fees and costs invoices, Bravo writes: "I told you since the moment that Dubbled [sic] withdrew, that I wanted this dismissed and you purposely dragged it until the court date." (Doc. 99-1 at 67).  To the extent this can be construed as an objection to the number of hours Attorney Kahle expended responding to her Complaint, it is unsupported and unfounded.  After Attorney Dubbeld withdrew from the case, IQ Data's sanctions issue remained, which required discovery, motion practice, and an evidentiary hearing.

          i. Travel Time

"[A]lthough there are no precise rules with respect to travel time, a fee applicant seeking to recover expenses incurred for retaining non-local counsel generally 'must show a lack of attorneys' practicing in that place who are willing and able to handle his claims.'" *Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 714 (11th Cir. 2014) (quoting *Barnes*, 168 F.3d at 437); *see also Brother v. Int'l Beach Club Condo. Ass'n, Inc.*, No. 6:03-cv-444-ORL28DAB, 2005 WL 1027240, at *5 (M.D. Fla. Apr. 28, 2005) ("Travel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel."); *Ranize v. Town of Lady Lake, Fla.*, No. 5:11-cv-646-Oc-PRL, 2017 WL 1037047, at *6 (M.D. Fla. Mar. 10, 2015) (declining to award travel time where only one of plaintiffs' three fee experts attested to being unaware of local counsel who could have handled the case and defendant's fee expert was personally aware of five qualified local attorneys ); *cf. James v. CSX Transp. Inc.*, No. 4:15-cv-204 (CDL), 2017 WL 2535726, at *6 (M.D. Ga. Feb. 21, 2017) (awarding fees for travel time where counsel believed it was in client's best interest to hire non-local co-counsel and the defendant provided no evidence to the contrary).

Attorney Kahle spent 13.1 hours traveling between his office in Palm Beach Gardens and the federal courthouse in Tampa for hearings. He billed 7.7 hours for driving to and from Tampa on October 6, 2021 to attend a status conference before the district judge (Doc. 99-1 at 31), and he billed 5.4 hours for the same trip on May 18, 2022, to attend the evidentiary hearing on IQ Data's Entitlement Motion (*Id.* at 45). The court noticed these hearings as in-person proceedings (*see* Docs. 47, 81). But IQ Data has not shown there was a dearth of Tampa-based attorneys equipped to handle this case. When IQ Data uncovered Bravo's allegations of identity theft as fraudulent, this became more than a run-of-the-mill collections

case. But the statutory schemes of FCCPA and FCRA are as well-known to Tampa's defense bar as they are to attorneys in Palm Beach Gardens. Because IQ Data has not established it was necessary to look beyond the Tampa market for an attorney who was willing and able to handle this litigation, the Court finds that including 13.1 hours of travel time in IQ Data's Supplemental Motion is unreasonable and excises these hours from the 231.8 total hours Attorney Kahle billed to this case.

                ii.  Excessive Time

"Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga.*, 168 F.3d at 428. Attorney Kahle acknowledges that "the typical FDCPA/FCCPA/FCRA case does not require expending the number of hours that were billed in this case. But, this was not the typical case." (Doc. 99 at 4). When Plaintiff's Complaint crossed Attorney Kahle's desk, he could not have known this litigation would require him to be a handwriting analyst and an amateur sleuth. Yet he spent 3.3 hours on May 3, 2021 reviewing "the court files of other cases involving the plaintiff to look for handwritten documents or signatures from her to defeat her identity theft claim." (Doc. 99-1 at 16). And he billed .8 hours the same day to communicating with the apartment's property manager and lawyer "to determine if [they] could positively identify the plaintiff in this case, to defeat her identity theft claim." (*Id.* at 15).

But based on an extensive review of the record, the Court concludes that Attorney Kahle expended some excessive hours defending Plaintiff's claims. These and other excessive charges appear in the Supplemental Motion: Attorney Kahle devoted 1.8 hours on April 22, 2021 to researching the applicable statute of limitations under FCCPA and FCRA and "when

the statute begins to run." (Doc. 99-1 at 11).  On April 28 and 30, 2021, Attorney Kahle spent a total of 13.4 hours on "research and analysis of Federal case law from around the country regarding the application and issues relating to identity theft under the FCRA and the FDCPA/FCCPA[.]" (*Id*. at 13-14).  He billed 2.8 hours to preparing IQ Data's answer and affirmative defenses (*Id*. at 19); he billed 1.6 hours on October 6, 2021 to "appear[ing] and attend[ing] in person, per court order, [ ] court status conference" (*Id*. at 31), although the hearing lasted only 14 minutes (and started 13 minutes late) (*see* Doc. 50); on April 28, 2022, Attorney Kahle spent .7 hours preparing a two-page unopposed motion to allow IQ Data's corporate representative to appear via Zoom at the upcoming evidentiary hearing (Doc. 82; Doc. 99-1 at 43).  Then, on May 2, 2022, he spent .2 hours reviewing the Court's Endorsed Order granting the motion (Doc. 84; Doc. 99-1 at 43).  Overall, these time expenditures seem excessive for the tasks, and the Court considers this in determining its across-the-board reduction.

       iii.   Clerical Work

A fee movant can recover only for a service "traditionally performed" by an attorney. *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1311 (S.D. Fla. 2009).  "Clerical work, such as the compilation of facts and statistics, coordinating schedules, basic communications, procedural matters, and housekeeping matters, is usually performed by legal assistants, not lawyers." *Machado v. Da Vittorio, LLC*, No. 09-23069-CIV, 2010 WL 2949618, at *3 (S.D. Fla. July 26, 2010).

A review of Attorney Kahle, Ms. Estrada, and Ms. Rendall's billing entries reveals some entries appear related to clerical tasks.  For example, on October 14, 2021, Attorney Kahle spent .2 hours talking to a process server (Doc. 99-1 at 32), and on December 20, 2021,

9

he billed .2 hours to "communications with judge's clerk re Status Notice we filed on Friday and the depo transcripts that should be linked to it." (*Id.* at 35). Accordingly, a slight across-the-board reduction on this basis is warranted.

### c. Reduction

As recognized by the Eleventh Circuit, "the computation of a fee award is necessarily an exercise of judgment, because "[t]here is no precise rule or formula for making these determinations." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436) (alterations in original). Here, parsing out which charges to exclude on an entry-by-entry basis is not a proper use of judicial resources. Based on the Court's knowledge and experience about reasonable and proper fees, the undersigned finds an across-the-board reduction of the lodestar amount by 10% is necessary and appropriate and recommends an award of fees for $45,222.75. *See Norman*, 836 F.2d at 1303 (where the time or fees claimed appear expanded or lack documentation or testimonial support, a court may make a fee award based on its own experience and knowledge). This amount is calculated:

Attorney Kahle: 231.8 hours – 13.1 (travel time) = 218.7 hours

218.7 hours x $225 per hour = $49,207.50

Paralegals Rendall and Estrada: 10.4 hours x $100 per hour = $1,040.00

Subtotal (attorney and paralegal hours before 10% reduction): $50,247.50

Total:   $50,247.50 - $5,024.75 (10% reduction) = **$45,222.75 in fees**

### d. Costs

IQ Data asks the Court to award it $3,657.00 in costs expended in responding to Plaintiff's Complaint, and it attaches invoices from Attorney Kahle's firm documenting in-

house photocopying charges, court reporter and transcript fees, mileage entries related to Attorney Kahle's travel, and private process server fees (Doc. 99-1 at 49-65). Bravo stated in her August 19, 2022 email to Attorney Kahle she is "willing to pay the 3k [in court costs]." (Doc. 99-1 at 67).

The Court granted IQ Data's Entitlement Motion as to Bravo under FCRA and the FCCPA (*see* Doc. 98). FCRA permits the recovery of reasonable attorney's fees upon a finding of bad faith but does not address the award of costs. *See* 15 U.S.C. § 1681n(c). The FCCPA, on the other hand, states that "the plaintiff is liable for court costs and reasonable attorney's fees incurred by the defendant" upon a finding that the plaintiff's case raised no justiciable issue of law or fact. Fla. Stat. § 559.77(2). In its Entitlement Order, the court made such a finding under FCCPA.

The reference to "court costs" in Section 559.77(2), however, does not create a substantive right to costs other than those allowed under federal law. *See McDonald v. Hunter Warfield, Inc.*, No. 3:20-cv-971-MMH-LLL, 2022 WL 807438, at *5 (M.D. Fla. Mar. 17, 2022) (finding that courts may apply state cost-shifting statutes in lieu of federal law *if* the state statute explicitly expands the right to additional costs, but Fla. Stat. § 559.77(2) does not do so). Consequently, the award of costs against Bravo is constrained by 28 U.S.C. § 1920, which lists the costs that may be taxed in federal court and includes "[f]ees of the clerk and marshal;" photocopying fees, court reporter fees, and fees for printed or electronically recorded transcripts "necessarily obtained for use in the case;" witness fees; and the compensation of court appointed experts and interpreters. 28 U.S.C. § 1920.

The Court has reviewed IQ Data's supporting invoices and finds the costs taxable under § 1920 with these exceptions: $230.72 and $228.74 in mileage fees incurred on October

6, 2021, and May 18, 2022, respectively (Doc. 99-1 at 52, 62);[3] and $245.00 in court reporter fees for Bravo's second deposition on November 18, 2022 (this appears to be a duplicate charge) (*see* Doc. 99-1 at 52, 58).  Additionally, the $230.00 in private process server fees associated with serving Rosario's deposition subpoena on October 20, 2021, and the $115.00 in private process server fees for serving Attorney Dubbeld with a deposition subpoena on December 22, 2021 (this deposition never occurred because Attorney Dubbeld successfully moved to quash), should be reduced to $65.00 apiece, the amount authorized by the schedule of United States Marshals Service fees found at 28 C.F.R. § 0.114(a)(3).  *See Monelus v. Tocodrian, Inc.*, 609 F.Supp.2d 1328, 1333 (S.D. Fla. 2009) (holding that private process server fees for service of subpoena are recoverable under § 1920 but may not exceed statutory and regulatory amount authorized by § 1921 and 28 C.F.R. § 0.114); *Miller v. Brachfield & Assoc., P.C.*, No. 6:13-cv-944-Orl-37GJK, 2014 WL 12868881, at *5 (M.D. Fla. Jan. 15, 2014) (same), *report and recommendation adopted,* 2014 WL 12868880 (Feb. 3, 2014).

The Court recommends awarding IQ Data $2,737.54 in costs.  This amount is the difference between the total costs requested by IQ Data ($3,657.00) and the non-taxable costs listed above ($919.46).

### III.   Conclusion

It is RECOMMENDED:

1. Defendant IQ Data's Supplemental Motion to its Motion for Entitlement to Attorney's Fees and Costs (Doc. 99) be GRANTED in part and DENIED in part.

---

[3] Section 1920 does not list mileage fees among the taxable costs permitted in federal court.

2. The Court award IQ Data $45,222.75 in fees and $2,737.54 in costs.

**IT IS REPORTED** in Tampa, Florida, on October 24, 2022.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object under § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions in this Report and Recommendation. 11th Cir. R. 3-1.